J-S18001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: B.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3206 EDA 2016 |

Appeal from the Decree Entered September 20, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000510-2016
CP-51-DP-0000270-2015
FID: 51-FN-000263-2015

BEFORE: PANELLA, J., SOLANO, J., and FITZGERALD[*], J.

MEMORANDUM BY PANELLA, J. **FILED MARCH 16, 2017**

B.C. ("Mother") appeals from the decree entered on September 20, 2016, in the Court of Common Pleas of Philadelphia County, involuntarily terminating her parental rights to her son, A.C., born in October 2011.[1] We affirm.[2]

_____

[*] Former Justice specially assigned to the Superior Court.

[1] By separate decree the trial court involuntarily terminated the parental rights of M.N., the putative father of A.C. M.N. did not file a notice of appeal.

[2] We observe that the Child Advocate recommended the involuntary termination of Mother's parental rights during the subject proceedings. **See** N.T., 9/20/16, at 42-43.

We summarize the relevant factual and procedural history as follows. On December 4, 2014, the Philadelphia Department of Human Services ("DHS") received a report that A.C. was in the care of family members and was severely malnourished. *See* Trial Court Opinion, 11/10/16, at 1. DHS learned that Mother had voluntarily placed A.C. with his uncle. *See id*. On February 13, 2015, the trial court adjudicated A.C. dependent, and set his placement goal as reunification with a parent. *See id*.; Order, 2/13/15.

DHS transferred the case to the Community Umbrella Agency ("CUA"), which required Mother to satisfy the following Single Case Plan ("SCP") objectives: to engage in mental health treatment; to attend the Achieving Reunification Center ("ARC") for services regarding parenting, housing, and anger management; and to visit with A.C. *See* Trial Court Opinion, 11/10/6, at 1-2.

On June 6, 2016, DHS filed a petition for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). A hearing occurred on September 20, 2016, during which DHS presented the testimony of Montrese Jordan, the CUA caseworker from February 2016 to August 2, 2016, and Christopher Waters, the CUA caseworker from August 2, 2016 to the present. Mother testified on her own behalf.

By decree entered on September 20, 2016, the trial court involuntarily terminated Mother's parental rights. In addition, by order entered that same

day, the trial court changed A.C.'s placement goal to adoption. Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) and (b).[3] The trial court duly filed its Rule 1925(a) opinion.

On appeal, Mother presents the following issues for our review:

A. Whether the trial court erred in terminating Mother's parental rights pursuant to [23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b)] where it was not supported by clear and convincing evidence when Mother completed a substantial portion of her [ ] SCP goals[?]

B. Whether the trial court erred in terminating Mother's parental rights where Mother had visited [A.C.] and there was a bond between [her] and [A.C.] and the termination of parental rights would have a negative effect on the developmental, physical and emotional needs of [A.C.][?]

Mother's Brief, at 5 (unnecessary capitalization omitted).

We review Mother's appeal according to the following standard:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an

---

[3] Mother also appeals from the September 20, 2016 order changing A.C.'s placement goal to adoption. Mother, however, did not preserve a challenge to the goal change order in her concise statement of errors complained of on appeal. Thus, Mother has waived any issue on appeal with respect to that order. *See **Dietrich v. Dietrich***, 923 A.2d 461, 463 (Pa. Super. 2007) (stating that when an appellant filed a Rule 1925(b) statement, any issues not raised in that statement are waived on appeal).

abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We need only agree with the trial court as to any one subsection of 2511(a), as well as subsection (b), in order to affirm. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we conclude that the trial court properly terminated Mother's parental rights pursuant to § 2511(a)(2) and (b), which provides as follows:

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

This Court has explained that

[i]n order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation

omitted)). Further, "[t]he grounds for termination due to parental incapacity

- 5 -

that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

With respect to § 2511(b), "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id*. (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

Here, the crux of Mother's argument with respect to § 2511(a) is that the CUA caseworker, Christopher Waters, "did nothing to engage [her] in any services or help her obtain housing." Mother's Brief at 10. Mother asserts that her compliance with the permanency plan had improved prior to the hearing, "and she might have achieved full compliance with the assistance of the CUA worker." *Id*., at 11.

To the extent Mother argues the trial court abused its discretion in terminating her parental rights because DHS did not make reasonable efforts

to assist her in reunifying with A.C., we disagree. In ***In re D.C.D.***, 105 A.3d 662 (Pa. 2014), our Supreme Court held that § 2511(a)(2) does not require a child welfare agency to demonstrate reasonable efforts in reunifying parents with their children. There, our Supreme Court reversed the order of this Court and reinstated the trial court's order terminating the father's parental rights where the record supported the court's conclusion that grounds for termination have been established and that termination is in the best interests of the child by clear and convincing evidence.

Here, the trial court determined that DHS established grounds for the termination of Mother's parental rights pursuant to § 2511(a)(2) by clear and convincing evidence as follows:

> [A.C.] has been in care since February 4, 2015. Mother's objectives have been the same for the life of this case: mental health treatment, anger management, parenting, housing and visits with [A.C.]. Mother admitted that before DHS became involved, she was attending mental health [treatment]. However, Mother refused CUA's mental health referral, then failed to attend treatment with her chosen provider. Mother still has not re-engaged with treatment. Mother testified that she had been prescribed Seroquel, a medication which indicates a serious mental health diagnosis. Mother was referred for ARC services several times, but never attended. Mother does not have appropriate, stable housing. Mother is offered twice-monthly supervised visits. She has attended four visits in the last eight months. Mother admitted she is inconsistent because of her job. . . . Mother has not availed herself to CUA to obtain assistance to remedy her housing condition, even though she has income to seek subsidized housing. For the life of this case, Mother has not made *any* progress on her objectives, which demonstrates that Mother is unwilling to remedy the causes of her incapacity to parent and provide for [A.C.]'s physical and mental well-being. . . .

- 7 -

Trial Court Opinion, 11/10/16, at 5-6 (emphasis added; citations to record omitted). The testimonial evidence fully supports the court's findings.

Specifically, Ms. Jordan testified that Mother minimally complied with the permanency plan during her tenure on the case, from February 2016 to August 2, 2016. *See* N.T., 9/20/16, at 15. Likewise, Mr. Waters, the current CUA caseworker, testified that Mother has not completed any of the SCP objectives. *See id*., at 27.

Ms. Jordan testified that, when she had the case, Mother was working at Wendy's restaurant on an as-needed basis, but that she was not working "a lot of hours." *Id*., at 24-25. However, Ms. Jordan implied in her testimony that Mother stated she did not attend mental health treatment or visits with A.C. because of her job. *See id*., at 11-14. Mother confirmed on direct examination that she missed a mental health appointment and "a couple of" visits with A.C. because of her work schedule.[4] *Id*., at 37-38. With respect to housing, Ms. Jordan testified that Mother did not have appropriate housing during A.C.'s placement. *See id*., at 13. Mother testified that she is currently renting a room in a house. *See id*., at 35.

Based on the foregoing, we discern no abuse of discretion by the trial court in terminating Mother's parental rights pursuant to § 2511(a)(2). Indeed, the testimonial evidence demonstrates that since at least December

---

[4] Mother testified that, in July 2016, she started working for a window company for "[f]orty plus hours" a week. N.T., 9/20/16, at 35.

2014, A.C. was malnourished and voluntarily placed by Mother with relatives. Thereafter, since February 2015, when A.C. was adjudicated dependent, through the time of the subject proceedings, Mother's repeated and continued incapacity, neglect, and/or refusal to comply with any of her SCP objectives has caused A.C. to be without essential parental care, control or subsistence necessary for his physical or mental well-being. Additionally, the causes of Mother's incapacity, neglect, and/or refusal cannot or will not be remedied. Therefore, Mother's first issue on appeal fails.[5]

With respect to § 2511(b), Mother argues in her second issue that DHS did not satisfy its burden of proof because A.C. "continued to have a significant bond with" her. Mother's Brief, at 14. We disagree.

This Court has explained as follows:

While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child. *In re K.K.R.S.*, 958 A.2d 529, 533-536 (Pa. Super. 2008). The mere existence of an emotional bond does not preclude the termination of parental rights. *See In re T.D.*, 949 A.2d 910 (Pa. Super. 2008) (trial court's decision to terminate parents' parental rights was affirmed where court balanced strong emotional bond against parents' inability to serve needs of child). Rather, the orphans' court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship." *In re Adoption*

---

[5] Based on this disposition, we need not consider Mother's claims relating to § 2511(a)(1), (5), and (8). *See In re B.L.W.*, *supra*.

*of T.B.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). As we explained in *In re A.S.*, 11 A.3d 473, 483 (Pa. Super. 2010),

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011).

Moreover, our Supreme Court stated, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, 71 A.3d at 268. The Court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id*., at 269. The Court observed that, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*.

Here, the trial court concluded, "there was no positive, beneficial parent-child bond with Mother, and that termination of Mother's parental rights would not destroy an existing beneficial relationship." Trial Court Opinion, 11/10/16, at 9. Specifically, the court found as follows:

> Throughout the life of this case, Mother's visitation with [A.C.] has been inconsistent. Mother was given supervised visits twice monthly, but in the last eight months she has made only four visits. Mother has never given CUA her work schedule, and never

- 10 -

asks for more time to make up visits. When Mother does not visit, [A.C.] is not even upset. [A.C.] is able to separate at the end of the visit without crying, as testified by Mother. At the time of trial, [A.C.] had been placed with Foster Mother for over a year.[6] Foster Mother loves [A.C.] and treats him as her son by providing for all his needs. Foster Mother provides [A.C.] with a safe and permanent home and is willing to adopt him. The CUA caseworker testified credibly that it is in [A.C.]'s best interest to be adopted.

*Id.* (citations to record omitted).

Upon thorough review, the testimonial evidence overwhelmingly demonstrates that involuntarily terminating Mother's parental rights serves the developmental, physical and emotional needs and welfare of A.C. pursuant to Section 2511(b). Accordingly, we affirm the decree.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/2017

---

[6] A.C. is in a kinship foster home with his paternal aunt. *See* N.T., 9/20/16, at 9.